Okay, the next case on the docket is 519-0097. Oelze, is that right? Commissioner Oelze, Supply Company. Oelze Supply Company v. Ameren Illinois. Mr. Flanagan. May it please the Court and opposing counsel, here today, based on the ruling of the trial court Could you state your name just for the record, please? Yes, my name is Matthew Flanagan and I have, as co-counsel, Douglas Hoffman sitting at our table. Thank you. The order of the trial court stands in this matter, resulting in unfair and inequitable results for my client, Oelze Supply Company LLC. The application of the merger doctrine, in this case by the trial court, will result in unfair and result in harm to an innocent third party, being Oelze Supply Company, by essentially taking or rendering useless valuable real estate of theirs without compensation. More specifically, the heart of this case is a 1948 easement that was granted by the owners at the time, last name Bax. Originally it was a 160 acre tract that the easement corridor crossed upon in Washington County. The easement language had two, there are two parts of it that Oelze is asserting, arguing have been violated. One of which is that it says there are seven structures allowed. As currently there are eight pole structures, when a recent structure was installed, in violation of easement, only allowing for seven structures. There's additional violation of easement by the fact that the structure, most recent structure installed, that eight structure, the problematic one, has three poles to it. Whereas the easement cites that there are two pole structures that were compensated for. The violation of easement has caused, result is that guy wires have emanated and stemmed from that structure onto the Oelze owned real estate. So next door we have the Ameren real estate, and then we have Oelze real estate. This problematic structure is on the Ameren property, right on the border, and the guy wires go onto Oelze property. This new structure, does it replace a pole that was pre-existing under the 1948 easement? My understanding is that it does not, but we did not get to a trial for evidentiary hearing on this, so I don't know for certain the answer to that. But I do not believe, I believe it was a new structure, your honor. And that's, we're here, this is an interesting fact pattern. I just want to acknowledge that. We have a utility easement right away that will be defined as an easement in gross. And the, when it was granted, there was one owner of all the property. Fast forward today, there's at least five, I believe, owners of, or more of the property. One of which is Oelze Supply Company, the other is Ameren. There's no case on point. It is a unique set of facts. And we're arguing today that the court, trial court, should have evaluated this case, applied the principles of equity to this. Wait, wait, wait. You indicated that there was no trial. And I think you raised an interesting issue in that this was dismissed pursuant to 2-615. Yes, your honor. So what is the effect of that? The fact that it was dismissed under that section. Under that section, it was dismissed with prejudice. They asserted there are no facts which could have been asserted to support a cause of action. Okay. And what facts are you saying support the cause of action? The facts I discussed here, the fact that there are two clear violations of the easement. Those are the facts that were spelled out in the complaint. Again, there's too many structures and one of the structures is in violation. That's how a lot of easement is in violation. That's spelled out in the complaint. And then the application of the merger doctrine, as the case law cited, says that the party asserting merger has the burden of proving that at trial, none of which occurred here. Merger is a question of intent, was not able to establish that at any trial or any form of evidentiary hearing in this matter.  Amarin, and maybe this is a better question for Mr. Dowling, but Amarin takes the position that because they bought this property that the easements merged, correct? Yes, on a partial extinguishment of the easement, just on the Amarin tract. Okay. So you don't quarrel with that, that as to the property they bought, that easement merged into the estate that they owned? We do quarrel with that on two accounts. One is that we do assert that merger shall not apply. There's no supporting law in Illinois that a merger doctrine will be applied to this easement gross. The secondary, most of our brief has been discussing the matter that even if there was a legal, if it was applied at law, the equity disfavors merger and that there would be a balancing of the hardships. There's some unintended consequences that can have undue harm on the remaining owners left in that tract. When they bought the property, they knew it was subject to an easement. They didn't know that the intent being that it was limited to a certain number of structures. For example, the intent, the 1948 easement has a map attached to it on the back. I'm not trying to assert that that map said that those structures would be in that exact spot, but identifies that they're going to be spaced equally out along that easement corridor. Did not envision that they would put another one right there on an innate structure and in that location. Another unintended consequence would be based on the theory of Amarin's case in the trial court, really, is that could you not have Amarin purchased all the other real estate? Could you not squeeze out those remaining owners and put seven structures on a small piece of real estate? A more realistic argument would be currently there are eight structures. That's what we have asserted. That is a factual dispute, by the way, how many structures there are. Another reason we should get a trial. For example, if you distinguish the partial extinguishment of the easement on the Amarin tract, if you had eight to begin with, two of which were on the Amarin tract. If the court did hold that there was merger of that, you now have six, eight minus two, six structures left on the remaining property. The easement allows for seven structures. Could Amarin decide that they want to come in and put a whole other structure on Oldsie's property? The fact is to shrink the easement area, but there is not also shrink the burden on the real estate owners. These landowners are taken under burden without compensation. I want to understand the allegations. Is the complaint alleging that the new structure on the Amarin property has the guy wires over on the Oldsie property? Correct. The fact pattern is that the guy wires on Oldsie property emanate from the eighth structure, which those poles, the three poles, are on Amarin real estate. But they're coming onto the Oldsie property. Violation of the easement because whether or not the poles on Oldsie or started on Amarin should be irrelevant. The fact is there are eight structures along the entire easement corridor. Go on to further note that. Why can't Amarin put another pole on its own property? Amarin could. Why does Oldsie get to control what Amarin has on its own property? Because all parties are bound by an easement from 1948 that are all bound by those terms and the rights that emanate from that. So if there was no easement, yeah, Amarin could put a structure there. But by putting that structure there, harm has been caused to Oldsie because they, when Oldsie bought the property, they relied on the language of the easement but only allowed for seven. They read that to say they would not have allowed another structure that could have put, could have rendered useless without a piece of real estate of Oldsie's. But doesn't Oldsie have a different remedy under the circumstances other than just enforcement of an easement? Isn't there, aren't there other equitable causes of action that Oldsie can bring such as nuisance? We didn't bring it. Why couldn't you bring a nuisance allegation? Well, we didn't bring that because the. No, you didn't, but why couldn't you? Well, we could bring, say, we could, Your Honor. We could bring that saying that there is, we could bring a trespass nuisance. Those cause of action saying that this is located on property, they have no right to be there. The guy wires at least. Yeah, the guy wires. Yeah, because that's the harm to Oldsie. And these are, this is an area, again, wasn't able to establish this in trial or any type of evidence you're hearing. You were dismissed at the pleading stage and wasn't one of your arguments that you should have been allowed to amend? Yes, Your Honor. You were dismissed with prejudice. Yes, Your Honor. So why, if the judge would have allowed you to amend, why couldn't you in the alternative have brought, as you say, a trespass action or a nuisance action? Exactly, Your Honor. We could have. We, the judge did not, the Supreme Court did not allow us to bring such, to amend to do that. Even though the case law liberally allows the ability to amend, that was not allowed to us. We believe that our complaint was sufficient as it stood based on the violation of easement. Our, we focused on that easement because that's where all rights emanate from with respect to airmen's position and why they, their rights with respect to that area. You actually, you filed for declaratory judgment. Your complaint is for declaratory relief. It didn't have any alternative causes of action, did it? No, not in the initial stage. Right. Yeah. That's it. Yeah. But if the judge had given you an indication that Ameren could do whatever they wanted, such as the smerger, and if you had been granted leave to amend, there were certainly other things you could have done. Absolutely, Your Honor. And that's what we would have asked for. Did you ask for that relief? I don't remember exactly the language in the hearing. The hearing we had was not even on, was not the ability to flesh out the issue of merger in that hearing. I don't want to say if we did or not specifically ask for that or not. I want to point out that just another issue. It seemed to me like all of the discussion was about this easement and mergers and, you know, whether or not you had the right to enforce it in standing and things like that. Yes. That was so confusing to us is that we were told that there was an issue of standing, and our position was we have a real injury. We have valuable real estate that we can't use. We were asked by the court to provide, to, that was the point of our request. I don't remember exactly how it was framed, but a brief or a memorandum to the court on that issue. We filed that, go to hearing, and then we get an order based solely on the issue of merger. And, again, we didn't have the opportunity. The case law says that merger is a question of intent. The party asserting that has the ability, has the right to obligation, burden to assert that at trial. So one of the issues that come out of this that we, to bring out on the merger question is that if there was a merger just to begin with, we now have, if the court didn't have legal and equitable grounds to allow the merger, we now still have stray guy wires coming onto old zoo property. Are they coming from a pole that is considered one of the pole structures under the easement that the easement went away for that part? Well, we have questions now. Is that now the seventh? Is that the seventh structure or not? And so there are a lot of questions raised. And we want to hit on, additionally, the other issue in the complaint, the easement that we argue have been violated, and that's the fact that the structures can only have two poles. The most recent structure has three poles. The easement clearly has the language of two poles in there, and at the very beginning it says they were compensated for two poles. And in the brief event, that is correct. They were sort of compensated for two poles. No level of compensation was ever provided to OLSI for any of this whenever the new easement was provided. But OLSI was not the party to which the original compensation was paid. They're the successor in interest, the easement. In fact, all of these people are the successors in interest, right? Correct. And so I'm not sure about this compensation. I don't understand this. You say you didn't receive it, but you never received any compensation. That is correct. In 1948, the BACs are the ones that did receive it, but when they purchased the ground, they relied upon the existing record title of the easements that were running with the land. This is an easement in Gross that does run with the land. Typically, they don't, but there is case law that believes it's inside of the utility easements, the law asks that they do. So there is a reliance on that. Again, we weren't able to get to the trial court level to have a hearing to even explain the type of real estate, where this is, the level of harm, and why it's important for the court to evaluate. But that's because the court found that your pleading was inadequate. In other words, the court basically finds that nothing that you said in your pleading was adequate enough to allow it to grant you declaratory relief. Yes, the trial court said that, and they were in error when they stated that, and that there's a disregard of the law related to merger that was not, and we were not even had the opportunity to argue that before the court. But you did in your response to their motion to dismiss, you argued a diminution in your value of the property. Yes, we did. In the written pleading, there was an argument stated to that. That's a thing I was causing confusion on. That was the hearing is what I was referring to before the court is what was not a time that we talked about. I remember, I believe, talking about arguing this merger question. I mean, isn't this really a situation where Mr. Olsey is not getting the benefit of what he bargained for in his easement, the right to enjoy his property? That is correct. We have a landowner in Washington County that is very frustrated that Amaran has come in and taken this part of this ground that he had no expectation they would, because he relied on the easements. There's no denying the fact there was a 1948 easement. Not disputing that at all. The issue is how we're reviewing and evaluating it. And I'm not denying the fact that there is a doctrine of merger. I don't know if we're arguing that it does not apply to easements and gross today. But even if the court did hold that it would apply to easements and gross, there are many unintended consequences, if you apply to that, that could fall on these other remaining owners in that tract. And today it's an interesting set of facts. And the court, they're even innocent third party that has been harmed. And that's why we feel like the trial court should have been hearing to establish this. And I hit on this a minute ago. Establish what? A hearing to establish what? To establish the equities with regard to the impact of the merger. Why he thinks the ground is valuable. How much, you know, how much ground that is. How much ground that is what? I'm really having a little trouble with all of you. How much ground there is? Just the size of the real estate in question. In order to establish how valuable it is and how the impact of these guy wires being placed there has had on our client. In terms of an evidentiary hearing, there is a, there are competing affidavits. Tara Green for Amron in the record has an affidavit file that says there are seven structures. We have an affidavit of Mr. Olsey saying there are eight structures. That's very, those are competing affidavits. With those still outstanding, we were, a ruling was made on 2615 without being able to pursue that further with those parties making those affidavits as to what, as to which is fact or which isn't. Those are the arguments that we are making here today. I would ask that the court reverse the ruling of the trial court. If there's any further questions, I would be happy to receive any others. Thank you. Morning, Jay Dollar on behalf of Amron counsel, your honors. Those are a few questions for you. First of all, the complaint as led by Olsey and your question regarding whether or not new structure 295 was a replacement of an existing structure. The answer is yes. That's in the record that was found by the trial court. The affidavit of Tara Green for Amron specifically identifies that there are seven multiple pole structures, wood pole structures in the transmission and distribution line, poles 289 through 295. Mr. Olsey's affidavit does not contradict that there are only seven multiple wood pole structures in the transmission line. His affidavit, which takes an aerial photograph, simply says there are eight poles. What he fails to identify, even the trial court found, was that the easement as it is written not only permits those seven multiple wood pole structures, but it also permits for the guy wires and any other pertinences necessary to maintain or operate that transmission line or those seven poles. What existed prior to the complaint for declaratory judgment on Amron's parcel was a substation and a wood pole next to the substation that then fed into the transmission line. Those are pertinences that help maintain and distribute the electricity as envisioned by the easement, and it maintains and operates those seven wood pole structures. To get into some additional questions... And you took the position at trial court that the doctrine of merger applied. Is that correct? I also took that position as well, Your Honor. So if the doctrine of merger applies to the Amron tracks for the new pole, is it 295? New pole structure 295 is the one that is on the Amron track. And that has to... the pole is on the Amron track, but the guys are on the Olsey track. Is that correct? That is correct. So if the merger applies, how do the guys... how do they have to have the guy wires on the Olsey track? Olsey is still subject to the easement. It doesn't distinguish the easement as to the Olsey parcel whatsoever. As an example, if I wanted to take new pole structure 295 when I replaced it and actually move it physically onto the Olsey parcel, I could have done that, along with all the guy wires. They're subject to the easement, just like Amron's before Amron bought it. They would have been... that landowner or successor in interest would have been predecessor... So your position is that would apply even after the doctrine of merger? Yes, and that is clear in the cases that I've cited in the brief that even though... and the cases that the court relied upon itself, even though there is a subdivision of the original parcel, those easements go to the subdivision. And if there is a unity of title and ownership of a subdivided parcel that is subject to the easement, that's where the doctrine of merger comes in. Why does Mr. Olsey get the chance to have a hearing on your claim that a new structure 295 would still have allowed Amron to put the guy wires onto their track? Why don't they get a hearing on that? Well, the court found that, in essence, the easement itself permitted the new pole structure to be put on there. The guy wires are in the easement area itself. The structure did not violate the easement, even if you just looked at the seven poles in the first place. But that's not the court's burden under 615 or 619 is to decide the merits. The burden is only whether or not the pleading was insufficient law. So what is it about the pleading? You say in your motion, no standing, and you say that they all you say is that Amron replaced an existing multiple pole structure. And it would comply with the easement. They came back, and we argued the doctrine of merger both at oral arguments and with subsequent reply briefs or a supplemental briefing that the court asked us to submit. The court found that based upon the doctrine of merger and their complaint, there was no set of facts that could ever be proven or shown that would entitle Olsey to the relief that he was requested, or that he had requested in terms of the doctrine of merger. But then you've got to have affidavits and everything else. Well, but the affidavits. It seems like you've got to have evidence. I'm sorry. The affidavits that are being looked at, even as part of the 615, are very specific. The issue that they were raising in their complaint was the fact that only new pole structure 295 created this eighth pole, and those guy wires from that eighth pole violate the easement because they're now on Olsey's property. 295 existed. The only thing that changed after 295 was replaced was the existence of guy wires that now went into Olsey's property. Prior to 295 being replaced, there was nothing that prevented Amron from putting a pole on Olsey's easement. Okay, but are we discussing the merits? Aren't you now discussing the merits? Really, aren't you talking about the merits of the case, whether or not, for example, the guy wires? You just told me they didn't exist, and now they do exist. So it seems like we have an evidentiary issue here. I don't know that I would. Maybe I misunderstood you. Did you say that those guy wires didn't exist? Well, that is in essence what their complaint alleges, is the fact that there were, that with the replacement of new structure 295, guy wires are now placed onto Olsey's property because it became a three-pole structure as opposed to a two-pole structure. Let me just add to that. So before Amron did that with 295, were there any guy wires on Mr. Olsey's property? No, ma'am. Okay. So we do have a change. There is a change, but it's a change that is foreseen and permitted under the easement. The easement. If the court believes your interpretation of the easement. I mean, isn't that really what they're going to declare a declaratory judgment action? No, but even a court, even if they're looking at it from a declaratory judgment action, they've got obviously the right to interpret the easement as it's written and make a determination as to whether or not the facts as alleged would give rise to the ability to violate that easement and get the relief requested. He's taking a look at the easement and saying there's nothing in this set of facts that had been alleged and nothing in this set of facts that he could ever allege or change or amend that would show that there was a violation of this easement. One of the provisions in the easement that I think is significant that the court, I believe, alluded to as well, is the fact that the easement provided that upon a reconstruction, renewal, or replacement or substitution of any of this electric line, these poles could be relocated as long as they kind of stayed within the center line that was originally described in the easement. He also painstakingly, he meaning Judge Emge, painstakingly went through every argument that Olsey submitted, including why is there a two-pole structure or a three-pole structure. The easement says multiple wood pole structures. It doesn't limit it to two. The opening paragraph said we're going to pay you for a two-pole structure $100 to the backs. Later on, when they're describing the limitation that the court found of seven structures, they used the word multiple. If they wanted to say you're limited to two poles, not multiple pole structures, they could have very easily limited it. They did not do that. The court found that that was not ambiguous. The court found that there was no limitation in terms of the number of multiple poles that could be on one pole structure that was on the easement. He found that the granted that he did also. What did he say about the wires? I'm sorry? What did he say about the wires? He found that the guy wires were permitted, and actually Mr. Flanagan, in his written arguments, both before Judge M.G. and this court, has admitted that the guy wires are located within the easement area that is described in the original 1948 easement. They're within the easement corridor. Well, alternatively, Flanagan's complaint sees damages, and that's print for relief. So do you think Flanagan, I mean, it sounds to me, and looking at the court's order, there's a lot of bad things going on here. Whereas your motion to dismiss under 615 raised two issues. One, I put in a new pole, and two, they don't have standing. Correct. So now we got into what seems like a summary judgment motion. And the court said he believed there was a standing issue but didn't feel it was necessary to address the standing issue. How can you not address the standing issue to decide the case? Either you have standing to be in the case or you don't. I can only address what the court said. I understand what the court said, but I don't think he didn't need to reach it. But he certainly made a lot of findings. Well, again, the complaint, as it is alleged, is based upon this 1948 easement as you have already pointed out. They sought a declaration of the rights and obligations under that easement. But a 615 is significantly limited to the complaint. Does it state any facts upon which a cause of action could be pursued? That's it, unless you turn it into a summary judgment motion. I understand that under 2615 the court is to take a look to see whether or not there's a cause of action that has been stated or if there's any set of facts that can be stated that would give rise to a cause of action. The court actually cited all that case law in its order and found that under these sets of facts there's nothing that would entitle him to relief. In essence, the court is saying that this easement has not been violated based upon the set of facts that are always going to be present. There are seven poles there that constitute the transmission line. There is an eighth pole with a substation that is in appurtenance to these seven poles. Everything lies within the easement. There is nothing that can ever be changed from that fact pattern that would allow them to say, hey, you violated this easement. Or there's damages arising from your violation of this easement because everything's within the easement corridor itself. So it's your position that when the court says and cites case law about how to interpret an easement and it goes on to interpret this easement that he's still within 2-615? I believe that's what he did, yes, ma'am. He has clearly stated that a cause of action should not be dismissed pursuant to 615 unless it is clearly apparent that no set of facts could be proved that would entitle the plaintiff to relief. He also cited the 2-615 motion or cited the 2-619 case law. He then went ahead and started going through his analysis as to each point, whether or not it was only a two-pole structure was allowed or not, whether or not there was a merger or not, whether or not the guy wires were an issue because they were located within the easement. And ultimately he found that there was no ambiguity in the easement and there was nothing that factually Olson could ever plead that would give rise to the type of relief he was requesting in a declaratory judgment action. Well, he also requested damages in the alternative. And 615, 2-615d says that after rulings on motions, the court may enter appropriate orders either to permit or require pleading over or amending or determining the litigation in order in part. Sure. And there was no opportunity to amend here. Do you think that in the alternative, these folks could have brought a trespass action, for example? Or do you think the interpretation of the easement foreclosed that? I think the interpretation of the easement foreclosed that. I don't know how I can trespass on something I'm permitted to use. If I have an easement on your land, that gives me the beneficial right to use that property consistent with the easement. It also gives you the right, obviously, to use it, but you can't interfere with my right of use. So if my right says I can put guy wires on your property and I put guy wires on your property within the easement corridor, I don't know that there's anything that you can do about it. The only way for the judge to know that Mr. Olsey, that Amron had the right to put guy wires on Mr. Olsey's property is to interpret the easement, the facts of the easement. That's not a 2-615. Well, it was actually pled by Olsey in the first place and admitted to by Olsey that the guy wires were within the easement area. But he also indicated that that depreciated his value and it wasn't within the contemplation of the easement. So now we have—I'm just trying to figure out, Mr. Dowling, whether we have an issue, a justiciable issue, or whether we have clearly a 2-615 deficient pleading. That's all that's really—the court did. It's a 2-615 route, right? I believe that's the basis of his decision. Right. But I just don't see how there could be damages or any issue that Olsey can bring up if I'm using the easement. But Amron doesn't have the right to expand its easement even if it's within the easement corridor, does it? I think there are—generally speaking, I would tell you I would agree with that. And the issue of whether or not— I believe there's case law regarding whether or not what is done does, in fact, increase the burden or doesn't increase the burden, which then would rise to a, perhaps, a triable fact. Right. Whether or not there was an expansion of the easement, wouldn't that require an evidentiary hearing? I think that would—that's probably true, sir, if there is, in fact, an expansion. But there was no expansion here. There was no final expansion. There was not even—I mean, I understand you're saying, oh, a new pole structure, 295, created this expansion. But under the terms of the easement, when you're looking at it and it says seven multiple wood pole structures, and they're calling it an expansion because it went from a two-pole structure to a three-pole structure, which is actually three tiers, if you will, or two tiers. But they were also alleging that there were guy wires in place for a pole that was not there before, weren't they? I don't recall that in their complaint, but I believe the guy wires came about as the replacement of 295, and that's what the basis of their complaint was, is 295 as a two-pole structure did not have guy wires on their property. This case is all about nothing more than guy wires being on an easement that's on OSE's property, located within the easement area. It's not that it's outside the easement area. It's simply he now has guy wires on it because they replaced an existing structure with a more modern structure, which they were permitted to do under the easement in the first place by its plain, unambiguous language. And in doing that, they put guy wires in the easement corridor in an area on OSE's property that is subject to the easement, just like they could have moved the entire pole over there if they wanted to. So the court... Assuming it complied with the original easement. Assuming it complied with the original easement. And even during the oral arguments with the court, he noted, theoretically, if Amron wanted to do it, they could put all seven poles on one land, one part of the land. Now, granted, the wire wouldn't be very effective because it would be laying across the land elsewhere, but the way it's worded, I can take seven poles and I can stick them on one of the five subdivided parcels is what the court was alluding to, at least, you know, perhaps in some of the sarcastic manner during oral arguments. Why do you think they don't have standing? I'm sorry? Why do you think that Mr. Olsey doesn't have standing? The basis of the argument presented to the trial court was simply the fact that he wants to say there are eight poles there. Therefore, that somehow violates the easement. But none of the poles were on his property. But the guy wires were. The guy wires were. None of the poles were on his property. So why doesn't he have standing? Because if it's in the easement area in the first place, and I guess it gets back into the situation that, again, the affidavit from Terry Green said there are only seven poles in the distribution line, which is what controls whether or not there's an eighth pole or not. The eighth pole is in appurtenance with the power station, the substation that was erected. There was never an eighth pole. But the other end, I guess to some degree, you figure out which way you want to count, east to west or west to east, which is pole number one, which is pole number eight. But you acknowledge Mr. Olsey has a portion of this law. He clearly has guy wires on his property, and he's clearly one of the subdivided parcels. So you can't amend the E.S. standing to bring this into the case of contempt? I didn't say it was a really good argument for standing. Okay, Mr. Kelly. Let's be honest about it. We've known each other a long time. Okay. All right. All right. Anything else? No, ma'am. Okay. Okay. Thank you very much. Yes, ma'am. Mr. Long is there. We have a few more minutes. A couple more speakers. Too much football. Do you have some football? Yes, Your Honor. Just a few quick points if I may. Sure. Three quick points I wanted to hit on. I stated in our brief, the trial court, we did request leave to amend a hearing on our motion to dismiss. The trial judge even said at hearing that if he dismissed, it would be without prejudice. It's in the record. It's cited in our brief. I wanted to note that. We're asking for a day in court on this matter. So that's the first point I wanted to make. Second point, if we're getting right into the merits of the case and we have these competing affidavits, it seems like everyone is arguing that because Mr. Olsey's affidavit doesn't expressly state that the eighth pole is within the easement corridor, then it's not an actual pole issue here. I think that's what they're saying. Even though there's a map attached showing where the pole is. Just an example of the evidence, the confusion and evidence of how we got here so prematurely. Just wanted to raise that issue. I believe that's the argument being made, the way I understood it. And just lastly, I just wanted to make the point that just because Amarant has an easement, it doesn't mean they can do whatever they want in the easement corridor. They're bound by the terms of the easement and the law and the ruling. Thank you, Your Honor. Thank you. Okay. Thank you all, ladies and gentlemen, for your arguments. Thank you. And I don't need to take any more advice from you. Thank you.